UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

------------------------------------------------------------X
YAN PING XU,

Plaintiff,

-against-

**MEMORANDUM & ORDER**
19-CV-1362 (JMA) (ARL)

SUFFOLK COUNTY, SUFFOLK COUNTY
SHERIFF OFFICE, ERROL D. TOULON, JR.,
CHRISTOPHER GUERCIO, MCCOYD PARKAS
& RONAN LLP, BILL P. PARKAS, ESQ.,
RAYMOND E. VAN ZWIENEN, STACEY
MCGOVERN, PETER KIRWIN, SUE DESENA,
BRIDGETTE SEDENFELDER,

Defendants.

**FILED
CLERK**

3/26/2021 1:22 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

------------------------------------------------------------X

**AZRACK, United States District Judge:**

On July 18, 2020, pro se plaintiff Yan Ping Xu ("Plaintiff") filed a motion seeking

reconsideration of the Court's July 14, 2020 Memorandum and Order dismissing her amended

complaint without prejudice for lack of subject matter jurisdiction pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(h)(3).   (See ECF Nos. 76, 78.)  Plaintiff also moved to  stay the

cancelation of the lis pendens pending her appeal of the July 14, 2020 Memorandum and Order.

(See ECF No. 80.)  On July 23, 2020, Plaintiff filed a Notice of Appeal and, on July 27, 2020, she

paid the filing fee.  (See ECF Nos. 79, 87-88.)  On July 27, 2020, Bill Parkas, Esq., McCoyd,

Parkas & Ronan LLP, Sue Desena, Christopher Guercio, Peter Kirwin, Stacey McGovern,

Bridgette Sedenfelder, Suffolk County, the Suffolk County Sheriff's Department, and Errol D.

Toulon, Jr.  (collectively, "Defendants") filed opposition papers.  (See ECF Nos. 84-85.)  Plaintiff

filed her reply also on July 27, 2020.  (See ECF No. 86.)  Raymond Van Zwienen ("Van Zwienen")

filed opposition papers on July 30, 2020 and Plaintiff filed a reply on August 3, 2020.  (See ECF

Nos. 89, 94.)  Further, by letter dated September 5, 2020, Plaintiff notified the Court that the

property at issue in this case has twice been sold since this Court's July 14, 2020 Memorandum and Order.  (See ECF No. 95.)  For the reasons that follow, the Court denies Plaintiff's motion for reconsideration.  And, even if the Court were to grant reconsideration, it would adhere to its July 14, 2020 Order.  Plaintiff's motion for a stay pending appeal is also denied.

## A.  **The Standard for a Motion for Reconsideration**

Plaintiff's motion is brought pursuant to Local Civil Rule 6.3.  The Rule provides that the moving party must set forth "the matters or controlling decisions which counsel [or a pro se party] believes the Court has overlooked."  See Local Civil Rule 6.3.[1]  "The standard for granting [] a motion [for reconsideration] is strict, and [r]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995).  "A motion for reconsideration should be granted only when the [moving party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).  It is "well-settled" that a motion for reconsideration is "not a vehicle for relitigating old

---

[1] Motions for reconsideration may also be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure.  See U.S. v. Real Prop. & Premises Located at 249-20 Cambria Ave., Little Neck, N.Y. 11362, 21 F. Supp. 3d 254, 259 (E.D.N.Y. 2014).  The standard for granting a motion for reconsideration pursuant to Rule 59(e) is "strict, and reconsideration will generally be denied."  Herschaft v. New York City Campaign Fin. Bd., 139 F. Supp. 2d 282, 283 (E.D.N.Y. 2001) (internal quotation marks omitted).  A motion for reconsideration under Rule 59(e) is appropriate when the moving party can demonstrate that the court overlooked "controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court."  Id. (internal quotation marks omitted).  "Alternatively, the movant must demonstrate the need to correct a clear error or prevent manifest injustice."  Id. at 284 (internal quotation marks omitted).  Rule 60(b) is "extraordinary judicial relief" and can be granted "only upon a showing of exceptional circumstances."  Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986).  Rule 60(b) of the Federal Rules of Civil Procedure also permits the Court to relieve a party from an order in the event of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or in exceptional or extraordinary circumstances.  Fed. R. Civ. P. 60(b).

issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).  It is within the sound discretion of the district court whether or not to grant a motion for reconsideration.  See Gupta v. Attorney Gen. of United States, 52 F. Supp. 3d 677, 679-80 (S.D.N.Y. 2014); Callari v. Blackman Plumbing Supply, Inc., 988 F. Supp. 2d 261, 287 (E.D.N.Y. 2013).

## B. Application

Familiarity with the record and the July 14, 2020 Memorandum and Order is presumed. Plaintiff contends that the dismissal of her complaint for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine was erroneous for primarily two reasons.[2]

First, Plaintiff contends that her instant lawsuit is different from the underlying state court litigation, making Rooker-Feldman's bar inapplicable.  In this regard, Plaintiff claims that because the parties and claims in this action are different from those in the underlying state court case, the Court erred by dismissing her amended complaint pursuant to the Rooker-Feldman doctrine. Plaintiff asserts that "this action has completely differed from the Surrogate proceeding," involves different parties, and "is not grounded on the same factual grouping."  (See Notice of Motion for Reconsideration, ECF No. 78.)  Plaintiff also argues that Rooker-Feldman does not apply because her claims are "based on the core events as to when and how to execute the Surrogate's default order and housing living issues."  (Id. at 1.)  Additionally, in her reply papers, Plaintiff—citing Sung Cho v. City of New York, 910 F. 3d 639, 645 (2d Cir. 2018), and the cases referenced therein—argues that Rooker-Feldman does not apply because "[i]n this case, the causes of action

---

[2] Plaintiff also claims that the Court erred when it stated she had resided at the subject premises since 2001, rather than 1998.  Although the Court referenced the date of Plaintiff's marriage (2001), rather than the date she moved in with the decedent and future husband (1998), this three-year difference has no bearing on and is not relevant to Plaintiff's claims.  Accordingly, such discrepancy does not provide a basis to grant Plaintiff's motion.

included the events prior to the eviction, such as, the fraud and erroneous leading to the Surrogate's default order." (See Pl.'s Reply to Van Zwienen's Oppositions at 2, ECF No. 94.)  Plaintiff insists that her fraud claims and constitutional claims are not barred by Rooker-Feldman.  (Id.)

Second, Plaintiff asserts that the Rooker-Feldman requirements have not been satisfied because the third factor, that the state-court judgment must have been rendered before the district court proceedings commenced, has not been met because the underlying state litigation has not yet concluded given her pending state court appeal.  Plaintiff also requests that, should the Court adhere to its decision, the cancelation of the notice of lis pendens be stayed pending appeal.

Defendants oppose Plaintiff's motion.  (ECF Nos. 84-85, 89-91).  Defendants assert that Plaintiff's motion is nothing more than an attempt to reargue her opposition to the motions to dismiss the amended complaint.  Because Plaintiff does not include any law or facts that the Court overlooked, Defendants argue that her motion should be denied.   Plaintiff filed a Reply only to Van Zwienen's Opposition.  (ECF No. 94.)   For the reasons that follow, the Court agrees with the Defendants and denies Plaintiff's motion.

### 1. The Court Finds No Basis to Reconsider Its Analysis Under Rooker-Feldman

Plaintiff's brief submission does not point to any facts (other than the three-year discrepancy of Plaintiff's occupancy, see supra at 3, note 2) or controlling decisions that the Court overlooked.  Rather, Plaintiff disagrees with the Court's application of Rooker-Feldman's bar. "When a federal suit follows a state suit, the former may, under certain circumstances, be prohibited by . . . the Rooker-Feldman doctrine."  See Sung Cho v. City of New York, 910 F.3d 639, 644 (2d Cir. 2018).  Plaintiff's arguments concerning Rooker-Feldman were addressed (and rejected) in the Court's Memorandum and Order.  (See ECF 76, generally.)   To the extent Plaintiff's reconsideration motion seeks to raise new arguments that she did not previously

advance, a reconsideration motion is not the appropriate vehicle to raise new arguments. In any event, as discussed below, none of Plaintiff's arguments warrant reconsideration or persuade the Court that dismissal of this action without prejudice was improper.

As an initial matter, the Rooker-Feldman doctrine does not require that there be a complete identity of parties in the underlying state-court action as the federal court case. See, e.g., Lomnicki v. Cardinal McCloskey Servs., 04-CV-4548, 2007 WL 2176059, at *4 n.7 (S.D.N.Y. July 26, 2007) (noting that "[c]omplete identity of all parties does not appear necessary"); Bush v. Danziger, 06-CV-5529, 2006 WL 3019572, at *4 n. 3 (S.D.N.Y. Oct. 23, 2006) (noting that the Supreme Court "has not held that there must be complete identity of plaintiffs or parties in the two proceedings"); see also Bernstein v. State of New York, 06-CV-5681, 2007 WL 438169, at *5 (S.D.N.Y. Feb. 9, 2007). Indeed, "[i]t would not make sense for a plaintiff to be able to frustrate Rooker-Feldman simply by naming an additional defendant who was not a party to the state court action." Lomnicki, 2007 WL 2176059, at n.7. Thus, the fact that there are additional Defendants in the present case is not an obstacle to Rooker-Feldman's bar. Gifford v. United N. Mortg. Bankers, Ltd., No. 18-CV-324, 2019 WL 2912489, at *5 (S.D.N.Y. July 8, 2019) ("Rooker-Feldman requires the federal court plaintiff to have been a party to the state court proceeding, but it does not require the federal court defendants to have been party to the state court proceedings." (citing Omotosho v. Freeman Inv. & Loan, 136 F. Supp. 3d 235, 246-47 (D. Conn. 2016))).

Insofar as Plaintiff challenges the Court's application of the Rooker-Feldman doctrine because, she claims, the instant action alleges different legal theories than her state court actions, she wholly ignores that the Court addressed this very point in the Memorandum and Order. (See Mem. & Order at 13-14, ECF 76.) The Court made clear that:

> Although Plaintiff now also claims, inter alia, a deprivation of her constitutional rights as a result of the judgment of the state court, the fact that plaintiff is alleging a new claim - - discrimination - - does not change the injury about which she complains, which was caused by the decision of the state court.

Mem. & Order at 13 (internal quotation marks and citation omitted) (emphasis added).

The Second Circuit has "developed the following formula to help guide [the analysis of Rooker-Feldman]: 'a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" Sung Cho, 910 F.3d at 646 (quoting Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005)). Here, Plaintiff's claimed injuries in this action were "produced by" the underlying state-court judgment.[3] Indeed, although Plaintiff challenges the conduct of third parties who enforced the state court's orders in executing her eviction, those actions were unquestionably produced by the underlying state court judgment. As the record makes clear, the Sheriff effectuated the eviction on December 14, 2018 pursuant to the state court orders. (ECF Nos. 73-5, 73-6, 74-5, 74-9, 74-10.)

Plaintiff argues that the events prior to her eviction, including alleged fraud by Van Zwienen, Parkas, and MPR LLP in procuring the state court default order, render Rooker-Feldman inapplicable. The Court disagrees. The Rooker-Feldman doctrine will generally not apply where a plaintiff's claims "'speak not to the propriety of the state court judgments, but to the fraudulent

---

[3] For relief, Plaintiff asserts that

> [her] actual residence in the subject premises should be reinstated, i.e., to the status quo before 12/14/2018. She is entitled to control and possess all and any tangible personal property, including decedent's automobile and items taken away from the subject real property, such as her computers, in addition to awarding the treble amount of damages and punitive damages as well as compensatory damages, costs, attorney's fees if any, together with such other relief as the court deems proper.

(Am. Compl. ¶ 48, ECF 49.)

course of conduct that defendants pursued in obtaining such judgments.'" Sung Cho, 910 F.3d at 645-46 (quoting Sykes v. Mel S. Harris and Assocs., LLC, 780 F.3d 70, 94-95 (2d Cir. 2015)). Here, however, because the alleged fraudulent conduct is at the core of the underlying state court orders, Rooker-Feldman bars review.[4]  See DaCosta v. Wilmington Trust, N.A., 19-CV-0913, 2019 WL 4071785, *5 (N.D.N.Y. Aug. 29, 2019) (finding Rooker-Feldman barred fraud claims where such claims were "'at the core of the very loan agreement that was not only found valid in state court but was enforced by its judgment.'") (quoting Desir v. Florida Capital Bank, N.A., 377 F. Supp. 3d 168, 173-74 (E.D.N.Y. 2019); accord Gifford v. United N. Mortg. Bankers, Ltd., No. 18-CV-6324, 2019 WL 2912489, at *5 (S.D.N.Y. July 8, 2019) (finding challenge to, inter alia, the allegedly fraudulent judgment in the underlying state foreclosure action was "inextricably intertwined" with the state court foreclosure action and thus barred by Rooker-Feldman).

This case is distinguishable from Sung Cho (and the cases cited therein) because Plaintiff complains of injuries caused by the underlying state court orders.  Indeed, in her demand for relief, Plaintiff seeks "reinstatement [] [of] the status quo before December 14, 2018" and the return of her personal property.  (Am. Compl. ¶ 48.)  Notably, December 14, 2018 is the date that the Sheriff effected the eviction of Plaintiff from the premises pursuant to the April Order and the subsequent orders from the Surrogate's Court, and the Appellate Division, Second Department, denying Plaintiff's requests for interim relief.  (ECF No. 74 at 10-11.)  Plaintiff's claims and requests for injunctive relief complain of injuries caused by the state court orders and "speak[] to the propriety" of the state court orders.  Sung Cho, 910 F.3d at 645-46.  Thus, they are barred by Rooker-Feldman. See Fiorilla v. Citigroup Glob. Markets, Inc., 771 F. App'x 114, 115 (2d Cir. 2019) (summary

---

[4]  Not only did Plaintiff have several opportunities to bring any alleged fraud in the procurement of the February 16, 2018 Order to light in the state court, she did in fact raise these claims which were squarely rejected by the Surrogate's Court.  (See April Order, ECF 73-6.)  As such—irrespective of Rooker-Feldman's applicability—Plaintiff's fraud claims are also barred by collateral estoppel.

order) (rejecting attempt to set aside state court's judgment and explaining that, in <u>Vossbrinck v.</u> <u>Accredited Home Lenders, Inc.</u>, 773 F.3d 423, 427 (2d Cir. 2014), the Second Circuit "clearly held that a plaintiff cannot rely on allegations that the state court judgment at issue 'was obtained fraudulently' to avoid application of the Rooker-Feldman doctrine."); <u>Vossbrinck</u>, 773 F.3d at 427 ("To the extent Vossbrinck asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, <u>Rooker-Feldman</u> bars Vossbrinck's claim.").

Plaintiff's damages claims, based on fraud and other purported misconduct, are also barred by <u>Rooker-Feldman</u>.  The damages she seeks, (<u>see</u> Am. Compl ¶¶ 47-48), were caused by the state court orders at issue.  <u>See</u> <u>Fiorilla</u>, 771 F. App'x at 115 ("Fiorilla's fraud claim is 'based upon the fraud perpetrated upon the state court,' . . . and the only 'damage' Fiorilla identifies from defendants' alleged fraud comes from the unfavorable state court judgment.  Accordingly, his fraud claim "invite[s] ... review and rejection of that judgment," which is precisely what <u>Rooker-Feldman</u> bars."  (citations   omitted)); <u>Charles v. Levitt</u>, 716 F. App'x 18, 22 (2d Cir. 2017) (summary order) (affirming that <u>Rooker-Feldman</u> precluded federal review where plaintiff's damages claims were "aimed at compensating him for the potential loss of the Property," which was caused by "allegedly wrongful actions related to the state court's imposition and execution of the Property's receivership"); <u>Roberts v. Perez</u>, No. 13-CV-5612, 2014 WL 3883418, *3 (S.D.N.Y. Aug. 7, 2014) ("Most telling for purposes of <u>Rooker-Feldman</u>'s causation requirement, Plaintiff suffered no tangible injuries prior to the issuance of the state-court judgment.").

Finally, Plaintiff also argues that <u>Rooker-Feldman</u> does not apply because her state court appeal is still pending.  The Court squarely addressed the fact that the Plaintiff's appeal of the April 5, 2018 Order to the Appellate Division, Second Department, remains pending.  Agreeing with the "[c]ourts in this Circuit [that] have routinely applied <u>Rooker-Feldman</u> despite pending

state-court appeals," (see Mem. & Order at 14), the Court rejected Plaintiff's contention otherwise and raised in her opposition to the motions to dismiss and now again on reconsideration.  Thus, in the absence of any new evidence, a need to correct clear errors, or an intervening change in controlling law, the Court adheres to its July 14, 2020 Memorandum and Order in its entirety.  See also Butcher v. Wendt, 975 F.3d 236, 244 n. 5 (2d Cir. 2020) ("District judges within our circuit that have grappled with this issue have concluded that Rooker-Feldman applies even where there is a pending state appeal of the challenged judgment. . . . "[and] this Court has strongly suggested— without deciding—that it does.").   Accordingly, Plaintiff's application for reconsideration is denied.

The Court's July 14, 2020 Memorandum and Order dismissed all of Plaintiff's claims without prejudice under Rooker-Feldman.  As explained below, there also additional reasons why dismissal of Plaintiff's claims, without prejudice, is warranted here.

## 2. Plaintiff's Federal Claims Also Fail on Other Grounds

Even if Rooker-Feldman did not bar all of Plaintiff's claims, as explained below, Plaintiff has failed to allege any plausible federal claims.  It is well-established that pro se submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997).   In addition, the Court is required to read Plaintiff's pro se amended complaint liberally and interpret it as raising the strongest arguments it suggests.  United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

The Supreme Court has held that pro se complaints need not even plead specific facts; rather the complainant "need only give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); cf. FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). However, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Twombly, 550 U.S. at 555).

### a. Section 1983

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. In order to state a § 1983 claim, a plaintiff must allege two essential elements. First, the conduct challenged must have been "committed by a person acting under color of state law." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) ("[T]he under color of-state law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotation marks and citation omitted). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id.; see also Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999). In addition, in an action brought pursuant to § 1983, a plaintiff must allege

the personal involvement of the defendant in the purported constitutional deprivation.  Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citing Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)).

### b. Immunity

As an initial matter, the individual Suffolk County Defendants are entitled to both qualified immunity and absolute quasi-judicial immunity.  In evicting Plaintiff, they were acting pursuant to a directive from the state court.  (See ECF Nos. 73-6, 73-10, 74-10.)

"A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  Carroll v. Carmen, 574 U.S. 13, 16 (2014) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).  Qualified immunity is available if it was "objectively reasonable" for the official "at the time of the challenged action to believe his acts were lawful."  Taravella v. Town of Wolcott, 599 F.3d 129, 134 (2d Cir. 2010) (quoting Higazy v. Templeton, 505 F.3d 161, 169-70 (2d Cir. 2007)).  "The objective reasonableness inquiry of whether the shield of qualified immunity applies to a defendant's conduct is a mixed question of law and fact."  Matthews v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004)).  Here, the individual Suffolk County Defendants are shielded by qualified immunity because, at the time of the December 14, 2018 eviction, the Surrogate's Court had, on December 3, 2018, denied Plaintiff's application to stay the April Order mandating that the Suffolk County Sheriff evict her.  (See ECF No. 74-9.)  Furthermore, a week before her eviction, on December 7, 2018, the Appellate Division, Second Department, signed Plaintiff's Order to Show Cause seeking, inter alia, an expedited hearing on her request to vacate the Surrogate Court's Order, but did not grant Plaintiff any interim relief and explicitly struck the language in Plaintiff's submission that requested that Van Zwienen and the Sheriff be retrained from entering the subject premises pending decision on the motion.  (See ECF No. 74-10.)  See,

e.g., Tomassi v. Sheehan, No. 15-CV-3605, 2016 WL 4768826, at *7-8 (E.D.N.Y. Aug. 23, 2016),

report and recommendation adopted, No. 15-CV-3605, 2016 WL 4767539 (E.D.N.Y. Sept. 13,

2016) (qualified immunity shielded defendants from liability where eviction was effected pursuant

to a "facially valid court order that they were required by law to execute"); Tornheim v. Eason,

363 F. Supp. 2d 674, 676-677 (S.D.N.Y. 2005) ("[W]hen a sheriff executes a facially valid court

order, he is afforded complete protection from liability . . . for any proper act done in its

execution.") (internal quotation marks and citation omitted).  Thus, because the December 14,

2018 eviction of Plaintiff was done in accordance with the state court orders (see ECF Nos. 73-6,

73-10, 74-10), and, in the absence of an order staying the eviction, the individual Suffolk County

Defendants are shielded from liability by qualified immunity.

Further, absolute quasi-judicial immunity also protects the individual Suffolk County

Defendants from liability because they were executing the state court's facially valid order of

eviction, in accordance with their duty to carry out mandates of the court.  See, e.g., Tomassi, 2016

WL 4768826, *9 ("As the enforcement arm of the Suffolk County District Court, Defendants are

entitled to quasi-judicial immunity for their acts."); Maldonado v. N.Y. Cnty. Sheriff, No. 05-CV-

8377, 2006 WL 2588911, at *5 (S.D.N.Y. Sept. 6, 2006) (holding that defendants executing a

facially valid order of eviction are protected by quasi-judicial immunity).

### c. **Monell** Liability

Moreover, Plaintiff has not plausibly alleged a Section 1983 claim against Suffolk County.

In order to hold a municipal entity liable under Section 1983, a plaintiff must demonstrate that the

constitutional violation complained of was caused by a municipal "policy or custom."  Monell v.

Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978).  A policy, custom, or practice of a

municipal entity may be inferred where "'the municipality so failed to train its employees as to

display a deliberate indifference to the constitutional rights of those within its jurisdiction.'"
Patterson v. Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (internal quotation marks and citation omitted)).   Here, even if the Amended Complaint plausibly alleged an underlying Fourth or Fourteenth Amendment claim against Suffolk County, which it does not (see infra at 15-16), Plaintiff has not satisfied Monell.   In this regard, Plaintiff's Amended Complaint alleges, in conclusory fashion, that "[s]ince 10/19/2018, defendant Sheriff Toulon has been informed of the eviction issue by plaintiff.  Sheriff was fully aware of the issue.  He, however, supervised, trained and instructed his deputies to seize plaintiff's home negligently and did not prevent them from said seizure."   (Am Compl. ¶ 17.)   As the record makes abundantly clear, the Suffolk County Defendants effected Plaintiff's eviction pursuant to a facially valid order of eviction issued by the Surrogate's Court on April 5, 2018 and a stay of which was denied by both the Surrogate Court on December 3, 2018 and the Appellate Division on December 7, 2018.  (See ECF Nos. 73-6, 73-10, 74-10.)

### d. Fourth Amendment Claim

Plaintiff's underlying Fourth Amendment claim also fails because the entry into (and seizure of) the subject premises by the Sheriff was authorized—and, indeed mandated—by the April Order and subsequent orders issued by the state courts.   The April Order explicitly stated "upon being presented with a certified copy of this order and the transcript thereof, the Sheriff of the County of Suffolk shall be and is hereby immediately required to enter upon the premises located at 12 Mallar Avenue, Bay Shore, New York, and eject therefrom Yan Ping Xu . . . and to put petitioner into possession of said premises."  (April Order at 7, ECF 73-6.)   Subsequently, Plaintiff failed to provide the undertaking mandated by the Surrogate's Court in order to obtain a stay.  (October 10, 2018 Order, ECF No. 73-9; Dec. 3, 2018 Order, ECF No. 73-10).   When

Plaintiff sought to appeal the Surrogate's Court, the Appellate Division granted Plaintiff an expedited appearance to hear her request for a preliminary injunction and TRO, (ECF No. 74-10), but granted her no interim injunctive relief and subsequently denied Plaintiff's requests for such relief on January 15, 2019. (ECF Nos. 73-11, 74-11.)

Plaintiff's citation to Soldal v. Cook Cty., Ill., 506 U.S. 56 (1992) is inapposite. In Soldal, a landlord—who had not yet obtained an order of eviction in state court—allegedly conspired with Sherriff's deputies to evict the plaintiffs by removing the plaintiffs' mobile home. Id. at 58-59. The Sheriff's deputies, who knew the landlord had not obtained an eviction order and knew that the landlord's actions were unlawful, refused to intervene. Id. at 59-60. Here, in sharp contrast, the April Order directed the Suffolk County Sheriff to evict Plaintiff from the property and Plaintiff did not obtain a stay of that order. See Soldal, 506 U.S. at 71 ("Assuming, for example, that the officers were acting pursuant to a court order, . . . and as often would be the case, a showing of unreasonableness on these facts would be a laborious task indeed.").

Plaintiff suggests that because the Defendants did not obtain a warrant, under N.Y. Real Property Actions and Proceedings Law ("RPAPL") § 749, before evicting her, she has a viable Fourth Amendment claim. Plaintiff misapprehends Soldal and the Fourth Amendment. N.Y. RPAPL § 749 states that "[u]pon rendering a final judgment for petitioner, the court shall issue a warrant directed to the sheriff of the county . . . stating the earliest date upon which execution may occur pursuant to the order of the court, and commanding the officer to remove all persons named in the proceeding . . . ." Plaintiff contends that, under New York law, the Surrogate's Court had to issue a separate warrant of eviction and that the April Order was insufficient. In support, Plaintiff cites a 1921 decision which suggests that the court must issue a separate warrant of eviction. See Rockaway Point Co. v. Friberg, 198 A.D. 923, 923, 189 N.Y.S. 936 (App. Div.

1921), aff'd, 232 N.Y. 599, 134 N.E. 587 (1922) ("We can find no authority for the attempted combination of the warrant with the final order.")

Plaintiff, however, misapprehends the requirements of a Fourth Amendment claim.  Even if Plaintiff were correct and the Surrogate's Court erred by not issuing a separate warrant of eviction under § RPAPL § 749,[5] any such purported violation of state law does not establish a Fourth Amendment violation.  The Suffolk County Defendants evicted Plaintiff pursuant to the directive of the April Order.  A Fourth Amendment claim is analyzed under a "reasonableness" standard.  Soldal, 506 U.S. at 71 ("Reasonableness is . . . the ultimate standard under the Fourth Amendment.").  "To determine whether a seizure is unreasonable, a court must 'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion' and determine whether 'the totality of the circumstances justified [the] particular sort of . . . seizure.'"  Pollok v. Chen, 806 F. App'x 40, 44 (2d Cir. 2020) (summary order) (quoting Carroll v. Cty. of Monroe, 712 F.3d 649, 651 (2d Cir. 2013) (citation omitted)).  In Pollack, the Second Circuit recently explained, citing Soldal, that "Fourth Amendment interests - - whether freedom from an unreasonable seizure of the apartment itself or their personal property in the apartment or both - - do not overcome the state's interest in . . . carrying out orders of the state courts and returning property to its rightful owner."  Pollok, 806 F. App'x at 44; see also DeSouza v. Park W. Apartments, Inc., No. 15-CV-01668, 2018 WL 2990099, at *17 (D. Conn. June 14, 2018), on reconsideration, No. 15-CV-01668, 2018 WL 4935997 (D. Conn. Oct. 11, 2018) (rejecting Fourth Amendment claim and finding that defendant's "initiation of lawful eviction proceedings hardly constitutes an unlawful seizure" of plaintiff's property).

---

[5]  It is not clear if Plaintiff ever raised this issue about an eviction warrant in state court.  In any event, the Appellate Division refused to stay the April Order, which indicates that Plaintiff's eviction comported with New York law.

Plaintiff's argument conflates the fact that, in some circumstances, the Fourth Amendment requires a warrant for a search or seizure with an alleged requirement under New York law that an eviction warrant is required under N.Y. RPAPL § 749 before a Plaintiff can be evicted.  Here, the April Order—which the Appellate Division refused to stay or vacate—directed the Suffolk County Sheriff to evict Plaintiff.  Those state court orders preclude Plaintiff's Fourth Amendment claims.[6]

### e. Due Process Claims

Plaintiff also alleges procedural and substantive due process claims under the Fourteenth Amendment.  Plaintiff's procedural due process claim is, at bottom, a claim that her eviction failed to comport, in various respects, with the dictates of New York law.  (See Pl.'s Opp'n Br. at 15-16.)  That is insufficient to state a plausible due process claim.  "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment."  Mathews v. Eldridge, 424 U.S. 319, 332 (1976) (internal quotation marks omitted).  Substantive due process requires plaintiff to show deprivation of a constitutional right under circumstances that were "arbitrary" and "outrageous," typically as demonstrated by conduct that "shocks the conscience."  See Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999) (quoting Rochin v. Cal., 342 U.S. 165, 172 (1952)).  Violation of the substantive standards of the Due Process Clause requires "conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  Natale, 170 F.3d at 259.

To prove a procedural due process violation, a plaintiff must demonstrate that (1) she had a constitutionally protected liberty or property interest and (2) she was deprived of that interest

---

[6] As explained earlier, Plaintiffs' Fourth Amendment claims against the individual Suffolk County Defendants are also precluded by qualified and absolute immunity and she has not plausibly alleged a Monell claim against Suffolk County.

without the requisite process.  See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002).  "Property interests are not created by the Constitution; rather, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" Ciambriello, 292 F.3d at 313 (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)).  Here, as the record clearly demonstrates, Plaintiff was heard in both the Surrogate's Court and the Appellate Division prior to her eviction.  See ECF 73-6, 73-10, 74-10 ; Lilakos v. New York City, 808 F. App'x 4, 9 (2d Cir. 2020) (summary order) ("[D]ue process requires a state to provide a hearing before depriving a person of their property. . . .").  Nor has Plaintiff alleged any conduct "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Pollok, 806 F. App'x at 45 (internal quotation marks and citation omitted).  Thus, plaintiff's due process claims lack merit.

### f. Discrimination Claims

With regard to Plaintiff's national origin discrimination claims, she asserts only that she is Chinese while Van Zwienen is Caucasian.  (See Am. Compl. ¶¶ 1, 28.)  Plaintiff also alleges that Van Zwienen's sister and "four white race friends . . . invad[ed] plaintiff's privacy."  (Id. ¶ 32.)  Simply alleging that the parties are of different races, without more, does not suffice to plausibly allege that Van Zwienen, the Suffolk County defendants, or any other defendant engaged in unlawful discrimination under any of the federal statutes and constitutional provisions cited by Plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662 (2009) (declining to "infer discrimination" in the absence of any facts that would "'nudg[e]'" his claim of purposeful discrimination "'across the line from conceivable to plausible.'") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); DeSouza, 2018 WL 4935997, at *7 (Plaintiff "'has done little more than cite to [his alleged] mistreatment and ask the court to conclude that it must have been related to [his] race.

17

This is not sufficient.'") (quoting <u>Grillo v. New York City Transit Auth.</u>, 291 F.3d 231, 235 (2d Cir. 2002) (add'l citation omitted)).

At one point, Plaintiff argues that, under federal anti-discrimination statutes, she does not need to allege discriminatory intent, citing cases such as <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424 (1971), which involve disparate impact claims.  The FHA forbids "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(b).  "'Broadly speaking, FHA . . . claims may be prosecuted on the basis of (i) disparate treatment, i.e., that plaintiffs were treated differently because of their membership in a protected class, or on the basis of (ii) disparate impact, i.e., that the defendant's practices have a proportionally greater negative impact on minority populations.'" <u>Nachmenson v. de Blasio</u>, No. 20-CV-4087, 2020 WL 6074061, at *2 (E.D.N.Y. Sept. 11, 2020) (quoting <u>M & T Mortg. Corp. v. White</u>, 736 F. Supp. 2d 538, 574 (E.D.N.Y. Aug. 26, 2010)).  Although "disparate-impact claims are cognizable under the Fair Housing Act [("FHA"), 42 U.S.C. § 3601, <u>et</u> <u>seq.</u>]", <u>Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.</u>, 576 U.S. 519, 545 (2015), Plaintiff, however, has not clearly pled a plausible disparate impact claim under the FHA.

### 3.  The Court Would Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

In the absence of any viable federal claims, the Court would decline to exercise jurisdiction over Plaintiff's state law claims.  <u>See</u>, <u>e.g.</u>, <u>Cave v. E. Meadow Union Free Sch. Dist.</u>, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); <u>Swiatkowski v. Citibank</u>, 745 F. Supp. 2d 150, 173 n.14 (E.D.N.Y. 2010)

(declining to "retain jurisdiction over any remaining state law claims plaintiff is attempting to assert given the absence of any federal claims that survive[ ]" after dismissing plaintiff's federal claims based on the <u>Rooker-Feldman</u> doctrine, collateral estoppel, and res judicata).

Moreover, the Court lacks diversity jurisdiction over any state law claims as Plaintiff, the law firm defendant, and the Suffolk County defendants are citizens of New York.[7]  To establish diversity jurisdiction under 18 U.S.C. 1332, there must be complete diversity of citizenship between the plaintiffs and the defendants.  <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 553 (2005). "Diversity is not complete if any plaintiff is a citizen of the same state as any defendant."  <u>St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply</u>, 409 F.3d 73, 80 (2d Cir. 2005).  Diversity is clearly lacking here.

## C. <u>Stay Pending Appeal Concerning the Cancelation of the Notice of Lis Pendens</u>

In addition to seeking reconsideration, Plaintiff seeks, in the alternative, a stay of the cancelation of the notice of <u>lis pendens</u> during her appeal of the Court's July 14, 2020 Memorandum and Order to the Second Circuit.  (<u>See</u> ECF 78.)

Defendants argue that in order to obtain a stay of the cancelation of the notice of pendency, Plaintiff must meet the traditional standard for obtaining a stay pending appeal, including likelihood of success.  It is well-established that:

> The standard in this circuit for a stay or injunction pending appeal is (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected.

---

[7]  In a footnote in the Court's July 14, 2020 order, the Court explained that even if <u>Rooker-Feldman</u> did not bar Plaintiff's state law claims concerning Van Zwienen's actions concerning Plaintiff's personal property after her eviction, the Court would still decline to exercise supplemental jurisdiction over those claims and that there was no diversity jurisdiction over those claims.  <u>See</u> Mem. & Order at 15, n. 1 (ECF 75).  The same reasoning applies to all of Plaintiff's state law claims.

LaRouche v. Kezer, 20 F.3d 68, 72 (2d Cir. 1994) (citation and internal quotation marks omitted);

Plaintiff argues that she is not required to meet this standard.  In order to file a notice of pendency under N.Y. C.P.L.R. 6501-6516, a plaintiff is not required to establish likelihood of success on the merits and a trial court cannot cancel a notice of pendency merely because a plaintiff is not likely to prevail.  See Diaz v. Paterson, 547 F.3d 88, 99 (2d Cir. 2008) ("'[L]ikelihood of success on the merits is irrelevant . . . ." (quoting 5303 Realty Corp. v. O & Y Equity Corp., 64 N.Y.2d 313, 320 (1984)).  However, once a trial court enters a final judgment dismissing a plaintiff's case and the plaintiff files a motion seeking to stay cancelation of a notice of pendency until an appeal is decided, it is appropriate for a trial court to consider the plaintiff's likelihood of success in determining whether to stay cancellation pending appeal.  See Da Silva v. Musso, 76 N.Y.2d 436, 443, 559 N.E.2d 1268, 1272 (1990) (explaining that "CPLR 6514(a) . . .  authorizes the continuance of the notice of pendency even though the plaintiff's claim has initially been rejected; but it conditions the plaintiff's right to impair the marketability of the property during the pendency of an appeal upon the issuance of a discretionary [stay under N.Y. CPLR 5519(c)]," pursuant to which "the court considering the stay application may consider the merits of the appeal.");  see also F.D.I.C. v. Four Star Holding Co., 97-CV-4184, 2000 WL 718443, *1-2 (S.D.N.Y. June 5, 2000) (citing the traditional four factors for a stay pending appeal to deny motion to stay cancelation of Notice of Pendency pending appeal and also noting that "[a] dismissal or other disposal of an action affecting real property, however, would require the cancellation of a Notice of Pendency."); NV Petrus SA and Petroleum Resources SA v. PG Trading Corp., 14-CV-3138, 2016 WL 11469719  (E.D.N.Y. Aug. 31, 2016) (applying four factors and denying motion to stay cancelation of Notice of Pendency pending appeal of magistrate judge order to the district judge).

Applying the relevant factors, the Court concludes that Plaintiff is not entitled to a stay pending appeal.

Most importantly, Plaintiff cannot establish a substantial possibility that she will prevail on appeal on her claims in this action, particularly her claims that she is entitled to ownership and/or possession of the property, which are the basis of the notice of pendency. Plaintiff's claims that she is entitled to injunctive relief that would permit her (despite the state court's eviction order) to continue to reside at the property are clearly barred by Rooker-Feldman. Not only are her claims barred by Rooker-Feldman, but, as explained earlier, her underlying federal claims, which seek both injunctive relief and damages, are also clearly meritless. There is not a substantial possibility that Plaintiff will prevail on appeal. In fact, the Court does not see any possibility of Plaintiff prevailing on appeal. As such, this factor weighs heavily against Plaintiff's request for a stay pending appeal.

As for the remaining factors, even assuming that Plaintiff could establish that the cancelation of the notice of pendency would cause her irreparable harm, the Court must also consider "whether a party will suffer substantial injury if a stay is issued." A stay pending appeal would have caused Defendant Van Zwienen substantial injury. Since March 2017, Van Zwienen has been involved with frivolous litigation as a result of Plaintiff's refusal to accept the rulings of the state courts. Permitting the notice of pendency to remain in place would have made it difficult for Van Zwienen to sell the property. With regard to the public interests that may be affected if the Court were to grant the requested stay, the Court finds this factor too weighs against Plaintiff. There is a public interest in finality of litigation and to stay the effects of a dismissal of frivolous claims works to diminish public trust in the courts. When these factors are considered— along with the fact that Plaintiff has does not have a substantial possibility of succeeding on appeal—the

21

Court concludes that a stay the cancelation of the <u>lis pendens</u> pending appeal is not warranted. Accordingly, Plaintiff's request for this stay is denied.

Finally, the Court notes that the property has already been sold.  <u>See</u> Plaintiff's Letter, dated September 5, 2020 (ECF 95); <u>see also</u> kiosk.suffolkcountyny.gov/kioskweb/default.aspx (last visited on March 26, 2021.)  Thus, Plaintiff's request for a stay of the cancelation of the notice of pendency appears, in any event, to be moot.  In similar circumstances, the Appellate Division has held that a plaintiff would not be entitled to reinstatement of the notice of pendency.  <u>See</u> <u>Matter of Est. of Vetri</u>, 208 A.D.2d 755, 755, 617 N.Y.S.2d 803, 804 (N.Y. App. Div. 2d. Dep't 1994) ("The real property in question was sold after the Surrogate's Court canceled the notice of pendency. Thus, the propriety of the order appealed from is academic.").

**D.  Conclusion**

For the reasons set forth above, the Court denies Plaintiff's motion for reconsideration. (ECF 78.)  Additionally, even if reconsideration were appropriate here, the Court would, upon reconsideration, still adhere to its original determination and dismiss Plaintiff's amended complaint in its entirety without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6)(1) and 12(h)(3) for lack of subject matter jurisdiction.  Additionally, as explained above, dismissal without prejudice is also warranted because Plaintiff has not alleged any plausible federal claims and, absent any such claims, the Court would decline to exercise supplemental jurisdiction over any of her state law claims.

Plaintiff's motion to stay the cancelation of the lis pendens pending appeal (ECF 80) is also denied.

**SO ORDERED.**

Dated:  March 26, 2021
            Central Islip, New York

                                                       /s/ (JMA)
                                                       JOAN M. AZRACK
                                                       UNITED STATES DISTRICT JUDGE